UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANCH BANKING AND TRUST
COMPANY, a North Carolina banking
corporation, as successor-in-interest to
Colonial Bank by asset acquisition from
the FDIC as Receiver for Colonial Bank,
successor by merger to Citrus and
Chemical Bank,

Case No.: 8:15-cv-1462-T-30ASS

       Plaintiff,

v.

CRYSTAL CENTRE, LLC,
a Florida limited liability company,
OSWALD P. CARREROU, individually,
and DONALD K. STEPHENS, individually,

       Defendants,

CENTERSTATE BANK OF FLORIDA, N.A.,

       Garnishee.

_____/

**PLAINTIFF'S MOTION FOR FINAL JUDGMENT IN GARNISHMENT
REGARDING GARNISHEE CENTERSTATE BANK OF FLORIDA, N.A. WITH
SUPPORTING MEMORANDUM OF LAW**

Plaintiff Branch Banking and Trust Company ("BB&T"), by and through its undersigned

counsel, hereby files this Motion for Final Judgment in Garnishment Regarding Garnishee

CenterState Bank of Florida, N.A. (the "Garnishee"), and states the following:

**PROCEDURAL BACKGROUND**

1.      On August 4, 2016, the Court entered a Final Judgment against Oswald P.

Carrerou (sometimes referred to herein as the "Judgment-Debtor") in the amount of $927,149.53,

plus post judgment interest (the "Judgment").  (Doc. 45).

2.      In connection with its efforts to enforce the Judgment, BB&T filed an Ex-Parte

Motion for Writs of Garnishment (the "Motion for Writs") (Doc. 49), which was granted by the

Court on August 24, 2016 ("Order Granting the Motion for Writs").  (Doc. 52).  On August 25,

2016, the Court issued a Writ of Garnishment directed to the Garnishee (the "Writ").  The Writ

was served on the Garnishee on August 29, 2016.  A true and correct copy of the Affidavit of

Service is attached hereto as **Exhibit "A."**

        3.      On September 1, 2016, the Garnishee filed its Verified Answer to the Writ and

demand for attorneys' fees, and indicated that it is in possession of the following two accounts:

|  |  |  |
|---|---|---|
| (A) | Account Holder Name (s): | Oswald P. Carrerou<br>Leah J. Carrerou<br>Peter O. Carrerou |
|  | Account Ending in: | xxx756 (the "756 Account") |
| (B) | Account Holder Name (s): | Oswald P. Carrerou<br>Leah J. Carrerou<br>Peter O. Carrerou |
|  | Account Ending in: | xxx230 (the "230 Account") |

        (together, as the "Garnished Accounts") (Doc. 78).

        4.      On August 29, 2016, the 756 Account had a balance of $138,147.55, and the 230

Account had a balance of $9,331.09. (Doc. 78, ¶¶ 4-5).  Leah Carrerou received notice of the

Writ by August 30, 2016.[1]  On August 31, 2016, before the Garnishee froze the accounts, Leah

Carrerou improperly removed nearly all of the funds from the two accounts.  As a result, when

the Garnishee filed its Verified Answer on September 1, 2016, the 756 Account only had

$1,000.00, and the 230 Account only had $5,304.19.  (Doc. 78, ¶ 2).[2]  As set forth in the

Garnishee's Verified Answer:

---

[1] On August 30, 2016, in connection with a separate writ directed to her employer A.R.E.A. Real Estate Appraisers, Inc, Leah Carrerou was served with a copy of BB&T's Motion for Writs of Garnishment, which specifically referenced the CenterState Writ.  A true and correct copy of the Affidavit of Service on Leah J. Carrerou is attached hereto as **Exhibit "B."**

[2] Pursuant to Fla. Stat. § 77.06(1), "[s]ervice of the writ shall make garnishee liable for all debts due by him or her to defendant and for any tangible or intangible personal property of defendant in the garnishee's possession or control at the time of the service of the writ or at any time between the service and the time of the garnishee's answer.

A.  On August 31, 2016 at 2:08 pm, Garnishee inadvertently allowed LEAH J. CARREROU to purchase, with funds from account no. xxx756, a cashier's check payable to 'Oswald and Leah Carrerou' in the amount of $137,147.55. A true and correct copy of said check is attached hereto and incorporated herein as Exhibit 'A'.

B.  On August 31, 2016 at 3:43 pm, the aforementioned cashier's check was presented to Garnishee for negotiation, and the resulting funds were utilized to purchase from Garnishee a second cashier's check payable to 'Peter Carrerou' in the amount of $137,147.55. A true and correct copy of this second check is attached hereto and incorporated herein as Exhibit 'B'.

C.  On information and belief, OSWALD P. CARREROU was aware of the existence of this garnishment proceeding at the time of the above-referenced transactions, though the personnel with whom he dealt at Garnishee were not.

D.  On information and belief, the cashier's check attached hereto as Exhibit 'B' was, on or about September 1, 2016, presented for payment or deposit to Wells Fargo Bank.

(Doc. 78, pp. 3-4).

5.     Additionally, the Garnishee "mistakenly allowed three checks totaling $4,026.90 to clear the [230 Account] before a garnishment hold was placed thereon." (Doc. 78, pp. 3-4).

6.     In light of the foregoing, the Garnishee also filed a Motion to Freeze Account/Extend Garnishment Hold on September 1, 2016 (the "Motion to Freeze") (Doc. 78).

7.     On September 2, 2016, the Judgment-Debtor filed a Motion to Dissolve the Writ (the "Motion to Dissolve"), and a supporting Affidavit, where he asserted that the funds in both of the Garnished Accounts were "marital property," which he claimed belonged to him and his wife, Leah Carrerou. The Judgment-Debtor further claimed and that their son, Peter Carrerou, was a "mere signor on the account." (Doc. 83 at ¶¶ 4-5; Doc. 83-1 at ¶ 5).

---

Service of the writ creates a lien in or upon any such debts or property at the time of service or at the time such debts or property come into the garnishee's possession or control."

3

8.      On September 6, 2016, the Judgment-Debtor filed a Response to the Motion to Freeze Account, where he again stated that the funds in both of the Garnished Accounts were "marital tenancy by the entirety funds," and represented the following to the Court:

> Garnishee has also filed a Motion to Freeze the account of Defendant's son Peter Carrerou, based upon a withdrawal of $137,147.55 (the 'Withdrawn Funds') from the joint account held by Defendant and Defendant's Spouse, Leah Carrerou, and the subsequent deposit of the Withdrawn Funds into the account held by Defendant's son, Peter Carrerou.
>
> Defendant has since returned the Withdrawn Funds back into the same joint account from which the Withdrawn Funds were taken.

(Doc. 88, p. 2 ¶¶ 4-6).[3]

9.      On September 6, 2016, the Garnishee filed its Amended Answer to the Writ (the "First Amended Answer"), which accounts for the return of the $137,147.55 to the 756 Account. (Doc. 86).   The funds that had been removed from the 230 Account were also returned to the Garnishee.  As a result, on September 8, 2016, the Garnishee filed its Second Amended Answer (the "Second Amended Answer"), which indicates that the Garnishee is in possession of $147,484.26 in the following accounts:

|      |                           |                    |
|------|---------------------------|--------------------|
| (A)  | Account Holder Name (s):  | Oswald P. Carrerou |
|      |                           | Leah J. Carrerou   |
|      |                           | Peter O. Carrerou  |
|      | Account Ending in:        | xxx756             |
|      | Balance:                  | $138,153.17        |
| (B)  | Account Holder Name (s):  | Oswald P. Carrerou |
|      |                           | Leah J. Carrerou   |
|      |                           | Peter O. Carrerou  |

---

[3] The Judgment-Debtor failed to disclose that Leah Carrerou improperly removed $137,147.55 from the 756 Account shortly after the Writ had been served on the Garnishee, but before the Garnishee was able to freeze the account, and then, within a span of less than two hours: (i) purchased a cashier's check payable to the Judgment-Debtor and Leah Carrerou in the amount of $137,147.55, and, ii) then used the first cashier's check to purchase a second cashier's check, in the amount of $137,147.55, payable to Peter O. Carrerou.  (Doc. 78, pp. 3-4).

|  |  |
|---|---|
| Account Ending in: | xxx230 |
| Balance: | $9,331.09 |

(Doc. 97, p. 2).

10.    On September 19, 2016, the Judgment-Debtor filed a sworn Claim of Exemption and Request for Hearing regarding the Garnished Accounts, asserting that the: "Funds in joint bank account are held jointly with my wife as tenancy by the entirety."  (Doc. 115, ¶ 12).

11.    On September 12, 2016, BB&T filed its Response in Opposition to the Motion to Dissolve and Supporting Memorandum of Law.  (Doc. 102).

12.    On November 9, 2016, the Judgment-Debtor and Leah Carrerou filed a Supplemental Memorandum of Law in Support of the Motion to Dissolve.   (Doc. 158). Additionally, Luxury Apartment Living, LLC, Mid Horizon Investments, LLC and Carrerou Enterprises, LLC (the "Carrerou Entities")[4] filed Joinders in the Motion to Dissolve and Supporting Affidavits.  (Doc. 157, 159, 160-162).

13.    On November 16, 2016, BB&T filed a Supplemental Memorandum of Law regarding the Motion to Dissolve.  (Doc. 166).

14.    On December 2, 2016, the Court held the third of three hearings/status conferences regarding the Motion to Dissolve.  At the December 2, 2016 status conference, counsel for the Judgment-Debtor agreed that an evidentiary hearing on the Motion to Dissolve *as to both* CenterState Accounts would not be necessary, and the Court indicated that it planned to issue a ruling *as to both* CenterState Accounts based on the papers filed with the Court.  *See* Transcript of the December 2, 2016 Status Conference (the "Transcript") (Doc. 210-1, pp. 5, 11-17).

15.    On December 9, 2016, the Court entered an Order denying the Motion to Dissolve

---

[4] The Judgment-Debtor, Leah Carrerou and the Carrerou Entities, collectively referred to as the "Carrerou Parties."

as to both CenterState Accounts (the "Order Denying the Motion to Dissolve").  (Doc. 190).

16.     On February 2, 2017, or nearly two months later, the Judgment-Debtor filed a Motion for Relief pursuant to Fed. R. Civ. P. 60(b)(1) and (6) (the "First Motion for Relief") (Doc. 204).   In the First Motion for Relief, the Movants claimed that the Court improperly denied them an evidentiary hearing on the Motion to Dissolve.  (Doc. 204).

17.     On February 17, 2017, BB&T filed its Response in Opposition to the First Motion for Relief.   (Doc. 210).   BB&T's Response and the Transcript from the December 2, 2016 hearing, which was attached thereto as an Exhibit, demonstrate that the contention that the Movants were improperly denied an evidentiary hearing is absolutely baseless.  (Doc. 210, 210-1, pp. 5, 11-17).

18.     On February 22, 2017, the Carrerou Entities filed their initial Motions to Intervene.  (Docs. 224 - 226).  The initial Motions to Intervene were denied because they did not comply with Local Rule 3.01(g).  (Doc. 231).   On March 3, 2017, the Carrerou Entities filed Amended Motions to Intervene.  (Docs. 237 - 239).

19.     At a status conference held on February 23, 2017, the Court expressed its concerns with the Movants' counsel's contention regarding the purported improper denial of an evidentiary hearing, and entered an Order which provides, in relevant part:

> On or before March 3, 2017, Defendant Carrerou and Leah Carrerou **shall** file a supplement to [the First Motion for Relief] identifying any statement **by counsel** requesting an evidentiary hearing or otherwise preserving the alleged right to an evidentiary hearing with regard to the CenterState writ.
>
> (Doc. 234, ¶ 5) (Emphasis added).

20.     On March 3, 2017, the Judgment-Debtor and Leah Carrerou filed a non-responsive supplement (Doc. 244), which fails to identify any statements by their *counsel* requesting an evidentiary hearing or otherwise preserving the alleged right to an evidentiary hearing with regard to the CenterState writ.

21.     On March 3, 2017, the Movants also filed an unauthorized Amended Motion for Relief pursuant to Fed. R. Civ. P. 60(b)(1) and (6), and they repeated their frivolous contention that the Court improperly denied them an evidentiary hearing, now claiming that they only meant to agree to proceed without an evidentiary hearing as to one of the two CenterState Accounts. (Doc. 242).

22.     On March 31, 2017, the Court denied the Amended Motions to Intervene.  (Doc. 263).

23.     On April 21, 2017, the Court denied the Amended Motion for Relief.  (Doc. 268).

## MEMORANDUM OF LAW

**(i)     APPLICATION OF FLORIDA LAW**

Florida law applies to these garnishment proceedings.  " 'Under Fed.R.Civ.P. 69, state law concerning supplementary proceedings to enforce a judgment will govern to the extent that it is not preempted by federal law.'  *General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1496 n. 22 (11th Cir.1997).  Florida law provides for the remedy of garnishment pursuant to Fla. Stat. § 77.01 et. seq." *Branch Banking & Trust Co. v. Park Circle, LLC*, 2:13-CV-25-FTM-38CM, 2014 WL 4059937, at *1 (M.D. Fla. Aug. 15, 2014). "This court must look to Florida law in reviewing an application for writ of garnishment, a claim of exemption, and an application for writ of execution.  Chapter 77 of the Florida Statutes prescribes the relevant procedures for issuance and enforcement of writs of garnishment." *Hendricks & Lewis, PLLC v. Clinton*, 4:10MC55-SPM/WCS, 2011 WL 4861855, at *2–3 (N.D. Fla. Aug. 9, 2011), *report and recommendation adopted*, 4:10MC55-SPM/WCS, 2011 WL 4861844 (N.D. Fla. Oct. 13, 2011).

**(ii)     BB&T is Entitled to Final Judgment in Garnishment.**

As indicated above, the Court has denied all of the: (i) Claims of Exemption; (ii) Motions to Dissolve; (iii) Motions for Reconsideration; and, (iv) Motions to Intervene that have been filed by the Carrerou Parties.  As a result, BB&T is entitled to a Final Judgment in Garnishment.

**A.     The Source of the Funds in the Garnished Accounts.**

There is a total of $138,153.17 in the 756 Account.  (Doc. 97, p. 2).   Of that amount, $137,147.55 came from Peter Carrerou, via a Cashier's Check, dated September 6, 2016.  A copy of the Cashier's Check and the associated deposit slip are attached hereto as **Exhibit "C."**

There is a total of $9,331.09 in the 230 Account.  (Doc. 97, p. 2).   Of that amount, $4,026.90 came from Peter Carrerou, via two checks, dated September 6, 2016, in the amounts of $4,000.00 and $26.90.   Copies of the checks and the associated deposit slips are attached hereto as **Exhibit "D."**

**B.     Funds Held as Tenants in Common Property.**

The Court denied the Judgment-Debtor's tenancy by the entireties Claim of Exemption.[5] As a result, the funds can only be held as: (i) tenants in common; or (ii) joint tenants with rights of survivorship.   The signature cards indicate that the Garnished Accounts are Multi-Party Accounts with Rights of Survivorship.   (Doc. 102-1, the 756 Account; Doc 102-2, the 230 Account).  However, under Florida law, "[w]hen a joint account holder withdraws funds from a bank account that is held as a joint tenancy with the right of survivorship, it terminates the joint

---

[5] The Court determined that the signature card for the 230 Account conclusively established that the account is not a tenancy by the entirety account under *Beal Bank, SSB v. Almand & Associates*, 780 So. 2d 45, 60 (Fla. 2001) (an express disclaimer of an intent not to hold the account as a tenancy by the entireties arises if the financial institution affirmatively provides the depositors with the option on the signature card to select a tenancy by the entireties among other options, and the depositors expressly select another form of ownership option of either a joint tenancy with right of survivorship or a tenancy in common).  Moreover, the Judgment-Debtor has abandoned his claim that the 756 Account is owned as a tenancy by the entirety.   Regardless, the signature card for the 756 Account conclusively establishes that it is not a tenancy by the entirety account for the same reasons that the signature card for the 230 Account conclusively establishes that it is not a tenancy by the entirety account.

tenancy nature of the [funds] and severs the right of survivorship as to the funds withdrawn." *Connell v. Connell*, 93 So. 3d 1140, 1144 (Fla. 2d DCA 2012) (internal quotations omitted) (citing *Wexler v. Rich,* 80 So.3d 1097, 1100 (Fla. 4th DCA 2012)).  Consequently, when Leah Carrerou withdrew the $137,147.55 from the 756 Account (Doc. 78, pp. 3-4), any rights of survivorship were terminated as to those funds.[6]  Accordingly, the Judgment-Debtor and his co-tenants, Leah J. Carrerou and Peter O. Carrerou, are presumed to own equal, undivided one-third interests in the $137,147.55.  *Julia v. Russo*, 984 So. 2d 1283, 1285 (Fla. 4th DCA 2008).[7]  Peter O. Carrerou has failed to asserted any interests in the Garnished Accounts, and therefore, he has abandoned any rights to do so.[8]  As a result, BB&T is entitled a minimum two-thirds interest in the $137,147.55, or $91,431.70.[9]

Given that $137,147.55 of funds in the 756 Account came from a Cashier's Check dated September 6, 2016 from Peter Carrerou, the maximum amount that could have come from any other sources (e.g. the Carrerou Entities or their tenants) would be $1,005.62.[10]  Moreover, to the

---

[6] Assuming arguendo that the Carrerou Entities or their tenants were considered as joint account owners, they would not be without recourse if they did not consent to Leah Carrerou's removal of the funds from the Garnished Accounts.  The "withdrawing joint tenant is liable to the joint owner for that person's share of the withdrawn funds." *Connell*, at 1144.

[7] The Garnishee's Verified Answer demonstrates that the Judgment-Debtor, Leah J. Carrerou and Peter O. Carrerou are the only joint account holders of both Garnished Accounts.  (Doc. 97, p. 2).

[8] He is now time-barred from doing so because he was identified in the Garnishee's Verified Answer as having an interest in the Garnished Accounts, BB&T sent him the applicable Statutory Notice under  Fla. Stat. § 77.055, and he did not seek relief within the 20-day period applicable under Fla. Stat. § 77.07.

[9] Similarly, BB&T would be entitled to a minimum two-thirds share of the $4,026.90 from the 230 Account, or $2,684.60.

[10] In an effort to manufacture support for his assertion that all of the funds in the 756 Account came from security deposits paid by tenants, the Judgment-Debtor offered, under oath, a Balance Sheet which purported to show that $136,988.25 of the funds in the 756 Account came from approximately 100 tenants.  (DE 110, ¶ 10; 110-1). However, the Carrerou Entities subsequently filed Motions to Intervene (which were ultimately denied by the Court) and they indirectly admitted, without any explanation, that the Judgment-Debtor inflated the amounts of the security deposits and the number of tenants associated with the 756 Account. (Doc. 237, ¶ 19) (Mid-Horizon Investments, LLC; 16 Leases; $31,093.25 in deposits); (Doc. 238, ¶ 18) (Carrerou Enterprises, LLC; 6 Leases; $10,100.00 in deposits); and (Doc. 239, ¶ 18) (Luxury Apartment Living, LLC; 39 Leases, $52,000 in deposits). Regardless, all of the deposits referenced by the Judgment-Debtor and the Carrerou Entities are irrelevant because, with the exception of $1,005.62, any such funds were subsequently removed from the 756 Account.  As mentioned above, $137,147.55

extent that the purported interests of the Carrerou Entities or their tenants in the $1,005.62 are considered,[11] they would have the "burden of establishing that any portion of the funds are not subject to garnishment." *Bennett v. Soc'y of Lloyd's*, 51 So. 3d 568, 569 (Fla. 3d DCA 2010).[12] Likewise, with respect to the 230 Account, the Judgment-Debtor bears the burden of demonstrating any portion of the $5,304.19 is not subject to garnishment.

## CONCLUSION

BB&T is entitled to a judgment for no less than $91,431.70 with respect to the 756 Account and no less than $2,684.60 with respect to the 230 Account.

**WHEREFORE**, Plaintiff Branch Banking and Trust Company respectfully requests that the Court:

(i)     Grant Branch Banking and Trust Company's Motion for Final Judgment in Garnishment Regarding Garnishee CenterState Bank of Florida, N.A.;

---

of funds that are currently in the 756 Account came from a Cashier's Check dated September 6, 2016 from Peter Carrerou. It should also be noted the updated sums offered by the Carrerou Entities are not accurate. For example, the Judgment-Debtor suggests that there is a security deposit in the 756 Account in the amount of $1,275.00, which purported belongs to tenant "Spiker." (Doc. 110-1, p.1) (Doc. 212-1, p. 35). However, tenant Spiker was evicted for failure to pay rent. A copy of the Eviction Complaint and Writ of Possession are collectively attached hereto as **Exhibit "E."** Further, at least some of the security deposits were refunded or partially refunded to tenants. For example, the Carrerou Parties claims that a security deposit of $1,275.00 is being held in the 756 Account for tenant "Hippeli" (Doc 212, p. 3); however, a check relating to the return of at least a portion of the security deposit is attached hereto as **Exhibit "F."** Moreover, the Carrerou Parties claim that a security deposit of $1,500.00 is being held in the 756 Account for tenant "Infinity Staffing" (Doc 220, p. 3); however, the lease that it provided in support of the assertion shows that only a security deposit of $750.00 was required (Doc. 220-1, pp. 1-2).

[11] It should be noted that the Judgment-Debtor previously represented to this Court, under oath, that the funds in *both* of the Garnished Accounts were purported marital property, owned with Leah Carrerou as tenancies by the entireties. (DE 83 at 5) (DE 83-1 at 5). Indeed, the lone Claim of Exemption filed in this matter was based on a purported tenancy by the entireties exemption. (Doc. 115). The Judgment-Debtor seemingly dropped that contention because, under Florida law, the signature cards conclusively established that neither of the Garnished Accounts were tenancy by the entireties accounts. Thereafter, the Judgment-Debtor claimed, under oath: "None of the funds [in Account Ending in 756] belong to me, but belong to each of the respective tenants." (DE 110, ¶ 10).

[12] The Court has already denied: (i) all Claims of Exemption; (ii) all Motions to Dissolve; (iii) all Motions for Reconsideration; and, (iv) all Motions to Intervene that have been filed by or joined by the Carrerou Entities. Moreover, the tenants are not referenced in the Garnishee's Answer as having any interests in the Garnished Accounts and they have not appeared in this action.

(ii)     Enter a Final Judgment in favor of Branch Banking and Trust Company in Garnishment Regarding Garnishee CenterState Bank of Florida, N.A., as to that certain account ending in 756; and, (ii) that certain account ending in 230;

(iii)    Order CenterState Bank of Florida, N.A., to pay to Branch Banking and Trust Company's counsel, Roetzel & Andress, LPA, via wire transfer, within five (5) business days, no less than $91,431.70 with respect to the 756 Account, and no less than $2,684.60 with respect to the 230 Account;

(iv)    Find that, Branch Banking and Trust Company is entitled to recover from Judgment-Debtor Oswald P. Carrerou, Leah J. Carrerou, Luxury Apartment Living, LLC, Mid Horizon Investments, LLC and Carrerou Enterprises, LLC, the reasonable costs and attorney's fees that Branch Banking and Trust Company incurred in connection with obtaining the relief requested herein, with the amounts of such costs and fees to be determined upon Branch Banking and Trust Company's filing of a separate motion for costs and fees; and,

(v)     Grant to Branch Banking and Trust Company, such other relief that the Court deems appropriate.

Respectfully submitted,

/s/ *Robert Malani*
W. Glenn Jensen, Esquire
Florida Bar No. 0126070
gjensen@ralaw.com
Robert Malani, Esquire
Florida Bar No. 52304
rmalani@ralaw.com
**ROETZEL & ANDRESS, LPA**
200 South Orange Avenue
SunTrust Center, Suite 1000
Orlando, Florida 32801
Telephone: (407) 896-2224
Facsimile: (407) 835-3596
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of August, 2017, the foregoing was filed through the CM/ECF system, and that the foregoing was served to those as indicated in the following Service List.

/s/ *Robert Malani*
Robert Malani

## SERVICE LIST

| VIA CM/ECF | VIA CM/ECF |
|---|---|
| Katie Brinson Hinton, Esq.<br>Richard J. McIntyre, Esq.<br>McIntyre Thanasaides Bringgold<br>katie@mcintyrefirm.com<br>rich@mcintyrefirm.com<br>Counsel for Oswald P. Carrerou and Leah Carrerou | Robert C. Chilton, Esq.<br>Sharit, Bunn & Chilton, P.A.<br>PO Box 9498<br>ServeRCC@winterhaven.com<br>Counsel for Garnishee CenterState Bank of Florida, N.A. |

11321612_1