UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BRANCH BANKING AND TRUST COMPANY,**

 **Plaintiff,**

v.               Case No.: 8:15-cv-1462-T-30AAS

**CRYSTAL CENTER, LLC,** *et al.,*

 **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

 Before the court is Branch Banking and Trust Company's ("BB&T") **Motion for Final Judgment in Garnishment Regarding Garnishee CenterState Bank of Florida, N.A.**, (Doc. 291), the **Response in Opposition** (Doc. 304) filed by Oswald Carrerou and non-party Leah Carrerou, and BB&T's **Reply** (Doc. 334).

**I.** **Background**

 This matter comes before the undersigned in relation to a judgment against Mr. Carrerou for $927,149.53 plus post-judgment interest (Doc. 45) and a subsequent award of attorney's fees and costs for $64,918.35. (Doc. 103). Soon after, the Clerk entered judgment and BB&T began collection efforts.

 On August 25, 2016, the court issued a writ of garnishment against CenterState Bank. (Doc. 54). CenterState Bank served an answer to the writ of garnishment. (Doc. 78). BB&T now seeks final judgment in garnishment as to two accounts held by CenterState Bank. (Doc. 291).

 The court held an evidentiary hearing on the motion, which took place on November 13,

1

2017, and December 15, 2017. (Docs. 351, 354). On the first day of the hearing, Mr. Carrerou[1] presented testimony from five witnesses, all of whom are current tenants at rental properties owned by non-party limited liability companies that are in turn owned by the Carrerous. (Doc. 351, pp. 68–149). Mr. Carrerou also presented numerous documents intending to show how the Carrerous deposited the tenants' security deposits into the CenterState Bank account ending in xxx756. (*Id.* at 81).

On the second day of the evidentiary hearing, Mr. Carrerou only presented testimony from Mrs. Carrerou. (Doc. 354). This time, Mr. Carrerou introduced even more documents intending to show that their non-party limited liability companies owned the xxx756 account and operated the account as part of renting properties out to tenants. (*See, e.g., id.* at 10–26). BB&T presented evidence intending to show inconsistencies between Mrs. Carrerou's testimony that the xxx756 account consisted only of tenants' security deposits and documents showing deposits from other Carrerou-owned companies into the account. (*Id.* at 244–60, Def.'s Composite Ex. 5).

## II.     Procedural History

1. On August 4, 2016, the Clerk of Court entered a final judgment against Mr. Carrerou for $927,149.53, plus post-judgment interest. (Doc. 45). On July 25, 2017, upon the joint stipulation of BB&T, Mr. Carrerou, Mrs. Carrerou, and another Garnishee, Citizens Bank & Trust (Doc. 278), the undersigned granted final judgment in garnishment on the writ against Garnishee Citizens Bank & Trust for $5,841.18. (Doc. 281). Therefore, $921,308.35 of the

---

[1] "Mr. Carrerou" refers to Oswald Carrerou throughout this Report and Recommendation. The "Carrerous" refers to Oswald and Leah Carrerou. Peter Carrerou will be referred to by his full name.

awarded judgment, plus post-judgment interest, remains outstanding.[2]

2. Mrs. Carrerou is not a party to the judgment against her husband Mr. Carrerou.

3. Peter Carrerou, Mr. and Mrs. Carrerou's son, is not a party to the judgement against Mr. Carrerou.

4. Luxury Apartment Living, LLC, Mid Horizon Investments, LLC, and Carrerou Enterprises ("Carrerou Non-Party LLCs") are not parties to the judgment against Mr. Carrerou.

5. On August 19, 2016, BB&T submitted an ex parte motion for writs of garnishment (Doc. 49), which the court granted on August 24, 2016. (Doc. 52).

6. On August 25, 2016, the court issued a writ of garnishment against Garnishee CenterState Bank. (Doc. 54)

7. BB&T served the writ of garnishment on CenterState Bank on August 29, 2016. (Doc. 291, Ex. B).

8. That same day, BB&T served on Mr. Carrerou a claim of exemption notice, pursuant to Section 77.041 of the Florida Statutes. (Doc. 291, Ex. A).

9. On September 1, 2016, CenterState Bank served its answer to the writ of garnishment with a motion to freeze a bank account at Wells Fargo held in Peter Carrerou's name (Doc. 78).

10. In its answer, CenterState Bank stated that Mr. Carrerou maintained two accounts there: one account ending in xxx756 and one account ending in xxx230. (Doc. 78, p. 2). Both accounts were titled in the names of Mr. Carrerou, Mrs. Carrerou, and Peter Carrerou. (*Id.*).

11. On August 29, 2016, the xxx756 account had a balance of $138,147.55 and the xxx230 account

---

[2] The court also granted final judgment as to two accounts held at Garnishee Pershing LLC for $11,877.04 and $174,919.91. (Doc. 300). That order is currently on appeal. (Doc. 324).

3

had a balance of $9,331.09.  (Doc. 78, pp. 3–4).

12. Despite the court issuing the writ of garnishment, CenterState Bank permitted Mrs. Carrerou to purchase, in knowing violation of the writ of garnishment, a cashier's check for $137,147.55 and made payable to "Oswald and Leah Carrerou" with funds from the xxx756 account.  (Doc. 78, pp. 2–4).

13. That cashier's check was then used to purchase another cashier's check in the same amount ($137,147.55), but made payable to Peter Carrerou.  (*Id.*)  CenterState Bank also allowed three checks to clear the xxx230 account before placing a garnishment hold on the account.  (*Id.* at 4).

14. Consequently, by the time CenterState Bank submitted its verified answer on September 1, 2016, the xxx756 account only had a balance of $1,000.00 and the xxx230 account had a balance of $5,304.19.  (Doc. 78, p. 2).

15. As part of its answer, CenterState Bank also moved to freeze the $137,147.55 deposited into Peter Carrerou's Wells Fargo bank account.  (*Id.*)

16. On September 2, 2016, Mr. Carrerou moved to dissolve the writ of garnishment against CenterState Bank (Doc. 83), to which BB&T responded (Doc. 102).

17. Mr. Carrerou responded to CenterState Bank's motion to freeze the $137,147.55 held in Peter Carrerou's Wells Fargo bank account.  (Doc. 88).  Mr. Carrerou stated the funds had been returned to the xxx756 account.  (*Id.*).

18. On September 8, 2016, CenterState Bank submitted its second amended answer to the writ of garnishment confirming the funds in the two bank accounts were returned.  (Doc. 97).  As of the date of its second amended answer, the xxx756 account had a balance of $138,153.17 and

4

the xxx230 account had a balance of $9,331.09. (Doc, 97, p. 2).

19. That same day, BB&T mailed CenterState Bank's amended answer and notice of the right to move to dissolve the writ of garnishment to Mr. Carrerou. (Doc. 96).

20. On September 19, 2016, Mr. Carrerou submitted a Claim of Exemption for the accounts held at CenterState Bank. (Doc. 115)

21. Mr. and Mrs. Carrerou submitted supplemental briefing to Mr. Carrerou's motion to dissolve the writ (Doc. 158) and the Carrerou Non-Party LLCs submitted joinders to Mr. Carrerou's motion to dissolve the writ (Docs. 157, 159–62).

22. On December 9, 2016, the court denied Mr. Carrerou's motion to dissolve the writ of garnishment against CenterState Bank. (Doc. 190).

23. On February 2, 2017, the Carrerous submitted a motion for relief from the court's order denying the motion to dissolve the writ of garnishment (Doc. 204), to which BB&T responded in opposition. (Doc. 210).

24. The Carrerou Non-Party LLCs submitted original and amended motions to intervene. (Docs. 224–26, 237–39).

25. On February 23, 2017, BB&T submitted a notice of extension and served that notice on Garnishee CenterState Bank and Mr. Carrerou pursuant to Florida Statute § 77.07(5), thereby extending the writ of garnishment by six months. (Doc. 235).

26. The Carrerous submitted an amended motion for relief from the court's order denying the motion to dissolve, as well as a supplement on March 3, 2017. (Docs. 242, 244).

27. The undersigned denied the motions to intervene on March 31, 2017. (Docs. 241, 268).

28. The undersigned denied the amended motion for relief on April 21, 2017. (Doc. 268).

29. On August 23, 2017, BB&T submitted its Motion for Final Judgment in Garnishment Regarding Garnishee CenterState Bank (Doc. 291), to which the Carrerous responded (Doc. 304). After the court granted leave, BB&T replied to the Carrerous' response. (Doc. 334).

30. At this time, BB&T seeks final judgment in garnishment as to the two accounts held by CenterState Bank.

**III.   Analysis**

    A.    <u>Applicable Law</u>

Pursuant to the Federal Rules of Civil Procedure, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located[.]" Fed. R. Civ. P. 69(a)(1). Florida law provides that "[e]very person or entity who . . . has recovered judgment in any court against any person or entity has a right to a writ of garnishment, in the manner hereinafter provided, to subject any debt due to defendant by a third person . . . and any tangible or intangible personal property of defendant in the possession or control of a third person." Fla. Stat. § 77.01. To obtain a writ of garnishment, the judgment creditor must file a motion stating the amount of the judgment. Fla. Stat. § 77.03. The writ must direct the garnishee to answer the writ within twenty days and state the amount named in the judgment creditor's motion. Fla. Stat. § 77.04.

After issuance of the writ, "[t]he plaintiff must mail, by first class, a copy of the writ of garnishment, a copy of the motion for writ of garnishment, and, if the defendant is an individual, the 'Notice to Defendant' to the defendant's last known address within 5 business days after the writ is issued or 3 business days after the writ is served on the garnishee, whichever is later." Fla. Stat. § 77.041(2). The Notice to Defendant states that the defendant must file a claim of exemption

6

to the garnishment within twenty of receiving the notice. Fla. Stat. § 77.041(1).

Service of the writ on the garnishee makes the garnishee "liable for all debts due by [the garnishee] to defendant and for any tangible or intangible personal property of defendant in the garnishee's possession or control . . . . and creates a lien in or upon any such debts or property." Fla. Stat. § 77.06(1). Then, after service of the garnishee's answer, the plaintiff must mail to the defendant a copy of the garnishee's answer and a notice advising the defendant that he (or any other person having ownership of the property) has twenty days to move for dissolution of the writ of garnishment if any allegation in the motion for writ of garnishment is untrue. Fla. Stat. §§ 77.055, 77.07(2). "Failure of the defendant or other interested person to timely file and serve the motion to dissolve within such time limitation shall result in the striking of the motion as an unauthorized nullity by the court, and the proceedings shall be in a default posture as to the party involved." Fla. Stat. § 77.07(2).

While the debtor must adhere to the time restrictions in Chapter 77 of the Florida Statutes, "before a final judgment authorizing the judgment creditor to reach funds held by the garnishee is entered, the interests of [a joint depositor] in the funds should be conclusively determined and the applicable law applied thereto." *Huckabee v. PIC Investigations Corp.*, 262 So. 2d 474 (Fla. 3d Dist. Ct. App. May 23, 1972) (citation omitted).

The plaintiff has six months from issuance of the writ to file either a dismissal of the writ or a motion for final judgment on the writ; the plaintiff may extend the writ by an additional six months upon notice to the garnishee and defendant. Fla. Sta. § 77.07(5).

B.  Discussion

BB&T filed an appropriate ex parte motion for writ of garnishment against CenterState

7

Bank. The undersigned granted the motion and the Clerk of Court entered the writ. CenterState Bank timely filed an original and amended answer, indicating that it had two accounts held jointly by Mr. Carrerou, Mrs. Carrerou, and Peter Carrerou. (Docs. 78, 86). BB&T complied with its obligations to provide notice to Mr. Carrerou pursuant to Sections 77.041(1) and 77.055 of the Florida Statutes. BB&T also timely complied with the statutory requirement for extending the writ and filing a motion for final judgment. Fla. Stat. § 77.07(5). The undersigned will address the parties' contentions concerning the two bank accounts at CenterState Bank separately.

      1.    The xxx756 Account

BB&T argues Peter Carrerou abandoned his right to any interest in the xxx756 account because he failed to seek relief pursuant to Section 77.077. (Doc. 291, p. 9).[3] However, when a garnishee's answer raises a question about a non-judgment debtor's interest in funds sought by the judgment creditor, before entering a final judgment in garnishment, the court must determine the non-judgment debtor's interest in the funds. *Huckabee*, 262 So. 2d at 474 (citation omitted). Here, CenterState Bank's original and amended answer to BB&T's writ of garnishment raised a question about the ownership interests of Mrs. Carrerou and Peter Carrerou in the xxx756 account. (Docs. 78, 86). Therefore, the court held the evidentiary hearing in this case to adjudicate the non-judgment creditors' interests in the xxx756 account.

The undersigned first looks to the originating bank documents. If the bank signature card

---

[3] BB&T also argues it is entitled to final judgment in garnishment as to the xxx756 account because the court denied the claims of exemption, the motions to dissolve, and the motions to intervene. (Doc. 291, p. 8). However, as the undersigned repeatedly stated, those decisions were non-final orders and the court would "conclusively adjudicate the interests of joint depositors in accounts subject to the writ before entering final judgment in garnishment." (Doc. 268, p. 11) (citations omitted).

does not expressly disclaim the tenancy by the entireties form of ownership, a presumption arises that a bank account titled in the names of two spouses is held as a tenancy by the entireties. *Beal Bank v. Almand & Assocs.*, 780 So. 2d 45, 58 (Fla. 2001) (citation omitted). An express disclaimer to not hold the bank account in tenancy by the entirety exists if the bank provides the depositors with the option on the signature card to select tenancy by the entireties, and the depositors expressly select the option to hold the account as a a joint tenancy with right of survivorship instead. *Id.* at 60 (citation omitted). Here, the signature card provided the three Carrerous the option to choose "Multiple-Party Account—Tenancy by the Entireties." (Doc. 102-1). However, the completed signature card shows the Carrerous selected "Multiple-Party Account with Right of Survivorship." (*Id.*). Therefore, Oswald and Leah Carrerou are not entitled to a presumption that the account is held in tenancy by the entirety.

In most states, the name or title to a bank account creates a presumption of ownership in the titleholder. *In re Int'l Pharmacy & Disc. II, Inc.*, 443 F.3d 767, 771 (11th Cir. 2005) (citation omitted). Based on the signature card (Doc. 102-1), the original presumption was that Mr. Carrerou, Mrs. Carrerou, and Peter Carrerou owned the funds in the xxx756 account as joint tenants with rights of survivorship. As joint tenants, each person is presumed to own an equal undivided interest in the xxx756 account funds. *Julia v. Russo*, 984 So. 2d 1283, 1285 (Fla. 4th Dist. Ct. App. July 2, 2008); *In re Anderson*, 561 B.R. 230, 240 (Bankr. M.D. Fla. Oct. 6, 2016).

However, both Mr. and Mrs. Carrerou expressly disclaimed any ownership of the funds in the xxx756 account. (Docs. 110, 112). Mr. and Mrs. Carrerou also discounted any ownership by Peter Carrerou in the xxx756 account funds by claiming the xxx756 account only held rental deposits paid by tenants. (Docs. 110, 112). Peter Carrerou failed to submit any motion or claim

9

indicating that he had any interest in the xxx756 account. Thus, before the court held the evidentiary hearing for the xxx756 account, the actual ownership of the account was unclear as each of the individual owners, through their actions or words, abandoned their personal interest in the account's funds.

For the court to conclusively adjudicate the ownership interests in the xxx756 account, at the evidentiary hearing, Mr. Carrerou had the burden to prove by a preponderance of the evidence that all or part of the money in the xx756 account is not subject to garnishment because it does not belong him. *Bernal v. All Am. Inv. Realty, Inc.*, No. 05-60956- CIV, 2009 WL 586010, at *5 (S.D. Fla. Mar. 6, 2009). To this point, Mr. Carrerou argues the record, evidence, and testimony presented at the two-day hearing prove that the xxx756 account is a business account for the Carrerou Non-Party LLCs, entities that Mr. and Mrs. Carrerou own as tenants by the entirety, and therefore cannot be reached by BB&T. (Doc. 359, p. 6). However, after considering the testimony presented at the hearing, as well as the whole record, the undersigned concludes that Mr. Carrerou failed to establish by a preponderance of the evidence that the xxx756 account belongs to the Carrerou Non-Party LLCs.

Determining ownership of an account depends on the title of the account, the account documents, and the actual operation of the account. *Nat'l Bank of Ga. v. Kennesaw Life & Accident Ins. Co.*, 800 F.2d 1542, 1546 (11th Cir. 1986). The court particularly considers who opened the account, who controlled the account, and the source of the account's funds. *Id.* Here, the contradictory testimony and evidence concerning the xxx756 account undermines Mr. Carrerou's claim that the funds belong to the Carrerou Non-Party LLCs.

To begin, CenterState Bank's original and amended answers to BB&T's writ of

garnishment do not indicate any ownership by the Carrerou Non-Party LLCs. (Docs. 78, 86). With his original motion to dissolve the CenterState Bank writ, Mr. Carrerou included an affidavit in which he claimed he owned all of the funds with his wife. (Doc. 83-1). Mr. Carrerou repeated his claim that the funds in the xxx756 account belong to him and his wife in his response to CenterState Bank's motion to freeze his son's Wells Fargo account. (Doc. 88). And in his Claim of Exemption, Mr. Carrerou claimed he and his wife owned the funds in the xxx756 account as tenants by the entirety. (Doc. 115). Nowhere in these documents did Mr. Carrerou claim that the Carrerou Non-Party LLCs owned the funds in the xxx756 account.

In an affidavit filed the same day Mr. Carrerou claimed that the funds belonged to him and his wife as tenants by the entirety, Mr. Carrerou also claimed that the xxx756 account "solely holds the rental deposits paid by the tenants" of the rental properties he and his wife owned through the Carrerou Non-Party LLCs. (Docs. 110, 115). In line with this claim, on the first day of the evidentiary hearing, Mr. Carrerou presented testimony from five tenants to show that each paid a security deposit and that, providing there is no breach in the lease agreement, each tenant expected their security deposit returned at the end of their lease. (Doc. 351, p. 60). Collectively, the five tenants testified as to $5,425.00 in funds at one time located in the xxx756 account. (Doc. 351, pp. 69–120). Thus, after originally claiming that the funds in the xxx756 account belonged to him and Mrs. Carrerou as tenants in the entirety, Mr. Carrerou changed course and claimed that the funds belonged to tenants and that the Carrerou Non-Party LLCs simply held onto the funds as security deposits pending the termination of each tenant's lease. (Doc. 351, pp. 61–62).

Then, on the second day of the evidentiary hearing, Mr. Carrerou changed his position again. (Doc. 354). This time, Mr. and Mrs. Carrerou argued that the funds in the xxx756 do not

11

belong to the tenants, but to the Carrerou Non-Party LLCs, which the Carrerous claim to own as tenants by the entirety. (Doc. 354, pp. 83–85, 92–93). The Carrerous' inconsistent positions as to the ownership of the xxx756 account undermine any effort by Mr. Carrerou to meet his burden of showing that the funds in the account are exempt from garnishment. In addition to these inconsistent positions, the contradictions in the Carrerous' evidence undermine their claims even more.

At the evidentiary hearing, the Carrerous presented evidence showing that other companies owned by the Carrerous made deposits into the xxx756 account. (*Id.* at 244–60). One of the Carrerous' companies, A.R.E.A. Real Estate Appraisers, made deposits for: $7,000; $10,550; $42,126; $22,000; and $20,500. (*Id.* at 244–64). Another one of the Carrerous' companies, Premier Construction, made deposits for $20,000 and $45,500. (*Id.*). Neither A.R.E.A. Real Estate Appraisers nor Premier Construction are one of the Carrerou Non-Party LLCs claiming an ownership interest in the xxx756 account funds. Mrs. Carrerou testified these deposits were repayments for personal loans the Carrerous made to their companies using funds from the xxx756 account—funds that the Carrerous previously claimed belong to their tenants. (*Id.* at 255–56). According to Mrs. Carrerou, some of these loans from the xxx756 account to their corporations covered payroll expenses for A.R.E.A. Real Estate Appraisers. (Doc 354, p. 255).

Mrs. Carrerou also testified that the $42,126.00 loan to A.R.E.A. Real Estate Appraisers was for property the Carrerous purchased. (*Id.* at 256). Mrs. Carrerou stated that neither she nor Mr. Carrerou had their tenants' permission to make personal loans from the xxx756 account to the Carrerous' other companies. (Doc. 354, pp. 251–52). She also testified that neither she nor the company receiving a loan documented the loans. (Doc. 354, pp. 249, 251). Additionally, Mrs.

12

Carrerou testified that: she did not know which security deposits were loaned to the Carrerous' companies; she did not know how much of the funds in the xxx756 account constituted forfeited security deposits; and she had not reconciled the xxx756 account since 2013—two years before the commencement of BB&T's underlying cause of action against Mr. Carrerou. (Doc. 354, pp. 244–257). The Carrerous' irregular maintenance of an account purportedly used by the Carrerou Non-Party LLCs to hold the tenants' security deposits further undermines the Carrerous' claim that the xxx756 is exempt from garnishment.

The evidence in the record, and Mrs. Carrerou's testimony, indicate that Peter Carrerou was merely a signor on the account with no ownership interest. The bank signature card to the xxx756 account lists Peter Carrerou as a "Joint Signor Secondary." (Doc. 102-1, p. 2). Although Mrs. Carrerou is also listed as a joint signor, Mrs. Carrerou's personal use of the account, such as making loans to her other companies, indicate her interest is greater than that of Peter Carrerou. Therefore, the evidence shows that the xxx756 account was originally opened as a joint tenancy with rights of survivorship between Mr. and Mrs. Carrerou, with Peter Carrerou a mere signor on the account.

After determining that the xxx756 account is not exempt from garnishment, the undersigned must determine how the funds in the account are divided. Absent contrary evidence, co-tenants are presumed to own equal undivided interests in the property. *In re Levy*, 185 B.R. 378, 381 (S.D. Fla. July 18, 1995); *Russo*, 984 So. 2d at 1285. Here, Mrs. Carrerou disclaimed her personal ownership of the funds in the xxx756 account; therefore, she has no interest in the

13

account's funds.[4] As for Peter Carrerou, not only did he fail to testify at the evidentiary hearing about any ownership interest, both Mr. and Mrs. Carrerou discounted any ownership by Peter Carrerou of the funds in the xxx756 account. (Docs. 110, 112).

As to Mr. Carrerou, although Mrs. Carrerou testified Mr. Carrerou is not involved in the rental properties owned by the Carrerou Non-Party LLCs (*Id.* at 12–13), Mrs. Carrerou also verified that Mr. Carrerou wrote checks to the xxx756 account to repay loans his company received from the xxx756 account, like the check from A.R.E.A. Real Estate Appraisers for $42,126.00. (*Id.* at 255). The undersigned finds Mr. Carrerou's actions of receiving loans from the xxx756 account for his company and then paying those loans back is consistent with someone who has an ownership interest in the xxx756 operating account.

Therefore, because Mr. Carrerou failed to present adequate evidence to the contrary, the undersigned finds that Mr. Carrerou individually owns all funds in the xxx756. Therefore, the undersigned recommends entering final judgment in garnishment in BB&T's favor against Mr. Carrerou for $138,153.17.[5]

---

[4] Mr. Carrerou also disclaimed ownership of the funds. (Doc. 110). However, the undersigned does not find Mr. Carrerou's affidavit entirely credible because of the inconsistent positions he has taken during the course of these post-judgment proceedings concerning his ownership of the xxx756 account funds.

[5] BB&T maintains that when Mrs. Carrerou withdrew funds from the xxx756 account, she terminated any joint tenancy or right of survivorship as to those funds. (Doc. 291, pp. 8–9) (citations omitted). Had Mrs. Carrerou not disclaimed her personal ownership, BB&T would be correct. *Connell v. Connell*, 93 So. 3d 1140, 1144 (Fla. 2nd Dist. Ct. App. Aug. 1, 2012) (citations omitted). Thus, when Mrs. Carrerou withdrew $137,147.55 from the xxx756, she would have been liable to Mr. Carrerou for that amount. *Wiggins v. Parson*, 446 So. 2d 169, 172 (Fla. 5th Dist. Ct. App. Feb. 2, 1984). However, this argument is without consequence in the context of these post-judgment proceedings because Mrs. Carrerou deposited the funds back into the xxx756 account, at which point Mr. Carrerou held an undivided interest in the funds again.

14

2. The xxx230 Account

As to the xxx230 account, Mr. Carrerou claimed that he owned those funds with Mrs. Carrerou as joint tenants by the entirety. (Doc. 83). Mrs. Carrerou corroborated Mr. Carrerou's claim at the evidentiary hearing. (Doc. 354, pp. 211–15). Mrs. Carrerou also testified that she and Mr. Carrerou funded the xxx230 account with her paycheck. (*Id.* at 214). Mr. Carrerou argues that no evidence contradicts the Carrerous' sworn testimony that the xxx230 account is joint tenants by the entirety. (Doc. 304, p. 6).

Despite the Carrerous' contentions, the undersigned already concluded that the xxx230 account is not held as joint tenancy by the entireties. (Doc. 190). The signature card states that the xxx230 account is a multi-party account with rights of survivorship with Mr. Carrerou, Mrs. Carrerou, and Peter Carrerou listed as titleholders. (Doc. 102-2). The presumption then is that the xxx230 is held by Mr. Carrerou, Mrs. Carrerou, and Peter Carrerou as joint tenancy with rights of survivorship. *In re Int'l Pharmacy & Disc. II, Inc.*, 443 F.3d at 771 (citation omitted). However, Mrs. Carrerou explicitly disclaimed any ownership interest by Peter Carrerou, stating that he was "a mere signor on the account." (Doc. 110, p. 3). Also, Peter Carrerou never submitted any claim of ownership to the funds, and he failed to testify at the evidentiary hearing about any ownership interest.

Therefore, the undersigned finds that the xxx230 account is owned by Mr. and Mrs. Carrerou as joint tenants with rights of survivorship. As such, each joint tenant owns half of the funds in the xxx230 account, or $4,665.55.[6] Therefore, the undersigned recommends entering final judgment in garnishment in BB&T's favor against Mr. Carrerou for $4,665.55 as to the

---

[6] Half of $9,331.09 is $4,665.55.

15

xxx230 account.

Accordingly, it is **RECOMMENDED** that:

(1) BB&T Motion for Final Judgment in Garnishment Regarding Garnishee CenterState Bank (Doc. 291) be **GRANTED in part and DENIED in part** in BB&T's favor; and

(2) **JUDGMENT IN GARNISHMENT** be entered against Garnishee CenterState Bank, in the amount of $138,153.17 (xxx756 account) and $4,665.55 (xxx230 account).

**Date: February 26, 2018.**

*[signature: Amanda Arnold Sansone]*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. *See* 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge